Zachary C. Myers (# 15302)
Flynn E. Beckman (#20034)
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 323-5000
Facsimile: (801) 355-3472
Zachary.Myers@cjlaw.com
Flynn.Beckman@cjlaw.com
*Attorneys for Plaintiff*

> **If you do not respond to this document within applicable time limits, judgment could be entered against you as requested.**

---

### IN THE FOURTH JUDICIAL DISTRICT COURT

### IN AND FOR UTAH COUNTY, STATE OF UTAH

| | |
|---|---|
| LANDER ALLEN and CHARLENE ALLEN on behalf of their minor child, L.A., <br><br> Plaintiff, <br><br> v. <br><br> NEBO SCHOOL DISTRICT, TAMMY HALCROW, an individual, ANGELA BATES, an individual, JOHN DOES and JANE DOES I-X, <br><br> Defendants. | **COMPLAINT and JURY DEMAND** <br><br><br> Case No. ___260400509___ <br><br> Judge ___Christine Johnson___ <br><br> Tier III |

Plaintiff, L.A., a minor, by and through her parents Lander Allen and Charlene Allen and her above-named counsel of record, hereby complains, alleges, and contends against Defendants Nebo School District, Tammy Halcrow, Angela Bates, and John Does and Jane Does I-X (collectively "Defendants"), as follows:

## PARTIES

1.      Plaintiff L.A. is a resident of Utah County, State of Utah.

2.      Lander Allen is L.A.'s father, and is a resident of Utah County, State of Utah.

3.      Charlene Allen is L.A.'s mother, and is a resident of Utah County, State of Utah.

4.      Defendant Nebo School District (hereinafter the "District"), is a public corporation and legal subdivision of the state of Utah, located within Utah County.

5.      Defendant Tammy Halcrow (hereinafter "Ms. Halcrow") is a school administrator / Vice Principal at Payson Junior High School and a resident of Utah County, State of Utah.

6.      Defendant Angela Bates (hereinafter "Ms. Bates") is a teacher at Payson Junior High School and a resident of Utah County, State of Utah.

7.      Defendants John Does and Jane Does I through X represent all as-yet-unidentified individuals, groups, or entities who caused or contributed to the events described herein.

## JURISDICTION AND VENUE

8.      This action is of a civil nature and jurisdiction is conferred pursuant to Utah Code Ann. § 78A-5-102.

9.      The causes of action and injuries giving rise to this Complaint occurred in Utah County, State of Utah, and thus venue is appropriate in the above-entitled court pursuant to Utah Code Ann. § 78B-3a-201.

10.     This claim is brought as a Tier III claim pursuant to Rule 26 of the Utah Rules of Civil Procedure.

11.     L.A., through counsel, served Nebo School District, State of Utah, a Notice of Claim on or about February 2, 2024, satisfying the notice requirement under Utah Code Ann. § 63G-7-401.

12. The Notice of Claim was timely under the Governmental Immunity Act, Utah Code Ann. § 63G-7-401.

13. This Complaint was timely filed after the Notice of Claim was served.

## FACTUAL BACKGROUND

14. At all relevant times discussed herein, L.A. was enrolled and attended school as a student in Nebo School District.

15. In February 2024, L.A. was enrolled and attended as a student at Payson Junior High School (hereinafter "PJHS").

16. While enrolled at Nebo School District, L.A. endured repeated harassment from other students due to her identifying as bisexual. L.A. was not alone, many of her friends were also targeted for being lesbian, gay, bisexual, transgender, or queer ("LGBTQ"). Nebo School District condoned and even encouraged this harassment, including but not limited to the following:

17. During the 2022-23 school year, L.A. and her friends were attacked by students with metal rods, causing one of L.A.'s friends to bleed.

18. When L.A.'s mother reported this incident to the Dean of Students at PJHS, no action was taken other than "talking" to the attackers.

19. L.A.'s mother informed the Dean of Students that L.A. and her friends were being targeted for being LGBTQ. The school did not respond or take any additional action related to the targeted harassment.

20. A female student at PJHS, A.G., and A.G.'s friend group, frequently harassed and insulted L.A. and L.A.'s friends.

21. A.G. and her friends harassed L.A. and her friends because L.A. and her friends identified as LGBTQ.

3

22. These particular harassers started harassing L.A. and her friends in approximately Fall or Winter 2023.

23. For example, on multiple occasions throughout 2023 and 2024, the harassers called L.A. and her friends slurs like "fag" or "faggot" based on sexual orientation, called L.A. a "furry" and barked at her in the halls (also because of her sexual orientation), and made other hurtful comments that were directed at L.A. because of her sexual identity.

24. Beginning in Fall or Winter 2023, on multiple dates from 2023 to 2024, L.A. repeatedly reported this harassment to PJHS officials, such as school counselors and Defendant Assistant Principal Halcrow.

25. L.A. first reported the harassment by A.G. to the Dean of Students, Mr. Kilpack in 2023. Nothing was done and the harassment continued.

26. L.A. was told that A.G. and her friends would be "talked to" but no punishment was ever enforced for their harassing behavior.

27. In late-2023 to early-2024, during an English class, A.G. had battered L.A. by pushing her forward into her desk.

28. After this battery, L.A. told her school counselor, Mrs. Adams, about it. Nothing was done and the harassment continued.

29. On another occasion, a different group of children threw full water bottles at L.A. and her friends, one of which hit L.A.'s friend in the head. The harassers barked at L.A. and her friends. (As mentioned previously, barking was a common harassment technique at the school directed at L.A. and others who identified at LGBTQ.)

30. L.A. reported this to school officials, who, on information and belief did not discipline the harassers or create a safety plan.

4

31.    At one point the school put up a sign for "No Barking." But this sign was soon removed and the behavior persisted without interruption or serious intervention.

32.    On another occasion, L.A.'s harassers put bugs in L.A.'s food and the food of her friends.

33.    A group of boys who are friends of A.G.'s called one of L.A.'s friends a "fat bitch," a gendered slur, in front of L.A.'s mother and a teacher. The teacher did nothing to stop this bullying.

34.    After the "fat bitch" slur, L.A. reported the incident to Halcrow. L.A. identified the harassers to Halcrow by their photos in the school directory, and the PJHS school police officer was informed of the incident, but on information and belief, nothing was done to stop the harassment or punish the harassers.

35.    School officials, including Halcrow, were dismissive and rude to L.A. when she tried to report incidents of bullying.

36.    School officials, including Halcrow, neglected to document L.A.'s or L.A.'s mother's reports of bullying, resulting in the sustained and repeated bullying of L.A. and other LGBTQ individuals to continue without disciplinary escalation.

37.    Around the same time, L.A.'s mother asked PJHS's Principal, Vice Principal, and Dean of Students each individually what they were going to do to prevent future harassment and attacks. Each claimed nothing additional needed to be done, whether police presence, safety plan, more supervision, or other safety measures.

38.    Another school official told the mother of another student something to the effect of "L.A. will be the next school shooter."

39.    School officials did not increase their supervision to prevent bullying.

40.    Due to the severity of the bullying, L.A. became suicidal and needed to be placed in counseling.

<u>Day Before the Battery</u>

41.    On Monday, February 5, 2024, A.G., a male student, and other students frequently in their company surrounded L.A. and her friend B. where they were sitting near the front doors of the school.

42.    A.G. and her companions insulted L.A. and B., including calling L.A. a "fucking retard" and a "bitch."

43.    A.G. and L.A. made rude gestures towards one another, but the incident ended without physical confrontation.

<u>Day of A.G.'s Assault and Battery of L.A.</u>

44.    On February 6, 2024, L.A. attended her regularly scheduled Tuesday classes at PJHS.

45.    During her lunch period, a male classmate approached L.A. and asked her if she was going to beat up A.G.

46.    L.A. did not know why her classmate was asking her that question, so she told her classmate that she was not going to.

47.    In her sixth period class, L.A. was approached by another classmate who informed her that he had heard that A.G. and L.A. were going to fight after school.

48.    A.G. showed up in L.A.'s classroom despite not being in that class, spoke with a friend, looked at L.A. and laughed, then spoke with the teacher.

49.    L.A. was afraid, so she notified her teacher, Ms. Bates, about A.G. potentially planning to harm her.

50. Bates told L.A. that she would report this threat to the principal at the end of class, but she did not do so.

51. Bates did not take any action to protect L.A. at the end of the class period or while L.A. was transferring between classes, despite knowing A.G.'s history of bullying L.A.

52. The school had notice of the pattern of bullying and knew about the impending attack, yet took no action to protect or safeguard L.A.

53. If A.G. had been called to the principal's office after L.A. reported her threats of physical violence, the attack could have been prevented.

54. If an adult had escorted L.A. between classes, A.G.'s assault and battery would have been prevented.

55. The school could have assigned an adult to monitor the halls for danger to students in general, but this was not done either.

56. A.G. waited until L.A was walking through the hall to her next class, then approached her from behind and knocked into her side to initiate a physical altercation.

57. L.A. responded in surprise and fear with a defensive swipe toward A.G.

58. A.G. then unleashed a barrage of strikes against L.A.'s head and neck, hitting L.A. with rapid force approximately twenty-nine times in a row.

59. Onlookers gathered around and many cheered and egged A.G. on as she brutally struck L.A. in the face and head.

60. L.A. blacked out momentarily.

61. L.A. suffered a concussion, a bloody nose, contusions to her head and neck, and pain and stiffness in her head and neck that impeded her ability to move her head side to side.

62. There were no adults monitoring the hall, and it took the interference of another student to pull A.G. off of L.A. and end the attack.

63. A.G. was able to attack L.A. for over a minute before a teacher came out of his classroom to intervene.

64. After the attack, no school administrator provided medical attention to L.A.

65. Vice Principal Halcrow parroted A.G.'s version of events to L.A.'s mother when she came to pick L.A. up after the attack, and responded dismissively when L.A. protested that was not what happened.

66. This disregard made the trauma of the physical assault even worse for L.A.

67. Since the attack, L.A. has been withdrawn from school to protect her from bullying.

68. L.A. has lost her social life at school as a result.

69. L.A.'s depression has deepened as a result of both her physical injuries and isolation from her friends.

70. In addition to her physical injuries, L.A. has suffered emotional distress and psychological trauma, leading to anxiety and fearfulness in similar social situations and fear of attending school.

71. As a result of the attack L.A. missed school and was forced to transfer schools because she was afraid of being attacked again by A.G. or related bullying due to her LGBTQ status.

72. Even after transferring schools, to Salem Junior High School ("Salem"), also in Nebo School District, the harassment continued.

73. The bully, A.G., was also allowed to transfer to Salem.

74. In the Fall of 2024, L.A.'s mother requested a no contact order be imposed on student A.G. to protect L.A., given the history of violent battery.

75. The day after A.G. and L.A. signed the no contact order, A.G. and her friends sat at a table next to L.A., who was by herself. A.G. and her friends called L.A. "puta"—Spanish for "bitch."

76. Shortly thereafter, still in the Fall of 2024, L.A.'s mother reported A.G.'s violation of the no contact order to the Vice Principal at Salem. Nothing was done in response. A.G. received no repercussions for violating the no contact order.

77. L.A. tried to get by despite the bullying, but she got behind on her grades. At times she skipped classes or didn't go to school altogether because she was afraid no one would protect her. Eventually, L.A.'s parents pulled her out of school entirely and are homeschooling at this time.

### FIRST CAUSE OF ACTION
**(Negligence – All Defendants)**

78. Paragraphs 1-77 are hereby incorporated by reference and alleged herein as if set forth in full.

79. Defendants had a duty to supervise the children in their care as a school *in locis parentis*.

80. Defendants had a duty to prevent foreseeable harm to L.A. from known harassing and bullying students.

81. Defendants had forewarning of A.G.'s threats of physical violence towards L.A.

82. Defendants breached their duty by failing to implement any precautions or protective measures that could have prevented A.G.'s attack on L.A.

83. As a direct and proximate result of Defendants' breach, Plaintiff was injured and incurred damages in an amount to be proved at trial.

### SECOND CAUSE OF ACTION
**(Violation of 42 U.S.C. § 1983 – All Defendants)**

84. Paragraphs 1-83 are hereby incorporated by reference and alleged herein as if set forth in full.

85. Defendants acted under color of state law as public officials employed by the public school system.

86. Defendants acted in accordance with Nebo School District policy, training, and custom.

87. Defendants denied L.A. equal protection on the basis of sex, declining to protect her due to her LGBTQ identity.

88. Defendants were deliberately indifferent to known sexual harassment of L.A. and specifically to the threat of violence against L.A. by A.G. on the basis of sex.

89. Defendants actively ignored and condoned the bullying of L.A. and her peers for being LGBTQ.

90. A school official said something to the effect that "L.A. could be the next school shooter" to another member of the school community, thereby participating in the bullying (or perhaps acknowledging that L.A. was being badly bullied and nothing was being done to stop it).

91. Defendants have deprived L.A. of the right to a traditional public school education by permitting her to be bullied and attacked at school.

92. As a direct and proximate result of Defendants' wrongful acts, Plaintiff was injured and incurred damages in an amount to be proved at trial.

## THIRD CAUSE OF ACTION
**(Violation of Title IX – 20 U.S.C. §§ 1681 et seq. – Against Defendant Nebo School District)**

93. Paragraphs 1-92 are hereby incorporated by reference and alleged herein as if set forth in full.

94. Defendant Nebo School District receives financial assistance from the U.S. government.

95. L.A. was targeted for harassment by bullies because of her sex and sexuality, and Defendant Nebo School District knowingly allowed this harassing behavior to continue virtually unchecked.

96. After each report of harassment or violence, Nebo School District did not suspend or discipline anyone that bullied L.A. or her friends. Nebo School District did not create a safety plan and did not create (or else did not enforce) no contact directives. Nebo School District did not provide any additional protections to L.A. or her friends.

97. On one particular occasion, on February 6, 2024, Nebo School District's agent Bates knew that A.G. was looking to attack L.A., yet took no action to protect L.A.

98. Defendant denied L.A. access to education on the basis of sex, declining to protect her due to her LGBTQ identity and L.A.'s nonconformance to gender stereotypes.

99. L.A. was denied access to education including missed instruction days, grades impacted, and inability to use common areas (she feared going to school).

100. As a direct and proximate result of Defendants' breach, Plaintiff was injured and incurred damages in an amount to be proved at trial.

## DAMAGES

101. Paragraphs 1-100 are hereby incorporated by reference and alleged herein as if set forth in full.

102. As a direct and proximate result of the negligent and careless acts of Defendants, Plaintiff has suffered injuries.

103. As a direct and proximate result of Defendants' violations of law, Plaintiff has suffered injuries.

11

104.    As a direct and proximate result of these injuries, Plaintiff has suffered substantial pain and mental anguish.

105.    As a further direct and proximate result of the negligent and wrongful acts of the Defendants, it was and is necessary for Plaintiff to seek medical care and treatment.

106.    Plaintiff has suffered and continues to suffer in the following damages:

a)      Past and future damages for costs of medical treatment and health care due to said injuries;

b)      Past and future damages, if any, for pain and mental anguish suffered;

c)      Past and future damages, if any, for compensated and gratuitous care and services, including therapy, and other care and assistance, and for the payment of medical expenses, rendered to and/or paid on behalf of Plaintiff by other person and entities, the amount of said special damages being the subject of proof at trial; and

d)      General damages for Plaintiff's pain and suffering (both mental and physical) and alteration in Plaintiff's lifestyles.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

1.      For special damages in an amount to be proven at trial.

2.      For general damages in an amount to be proven at the trial.

3.      For Plaintiff's costs and expenses of litigation incurred herein.

4.      For pre-judgment and post-judgment interest as allowed by law until the judgment is paid in full.

5.      For attorney fees as allowed by law, including pursuant to 42 U.S.C. § 1988(b).

6.      For injunctive relief including a safety plan, no-contact directives, alternative placement with services, expungement of any discipline record for L.A., training/policy compliance.

7.      For such other and further relief as the court deems just and equitable under the circumstances.

## JURY DEMAND

Pursuant to Utah Rule of Civil Procedure 38, Plaintiff hereby requests a trial by jury.

DATED this 4th day of February 2026.

CHRISTENSEN & JENSEN, P.C.

_____

Zachary C. Myers
*Attorneys for Plaintiff*

**Plaintiff's Address:**
c/o Zachary C. Myers
Christensen & Jensen, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111